# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

GORDON M. CAREY,

 *Petitioner*,

vs.

E.K. MCDANIEL, *et al.*,

 *Respondents*.

3:10-cv-00143-LRH-WGC

ORDER

  This represented habeas matter under 28 U.S.C. § 2254 comes before the Court on petitioner's motion (#22) to dismiss the unexhausted Ground 2, which will be granted, and for a final decision on the merits of the remaining Ground 1, following upon the Court's prior show-cause order.

### *Background*

  Petitioner Gordon Carey challenges the weapon enhancement sentence on his Nevada state conviction, pursuant to a guilty plea, of second-degree murder with the use of a firearm. He was sentenced to two consecutive terms of 10 to 25 years.

  In Ground 1, petitioner alleges that he was denied due process of law in violation of the Fifth and Fourteenth Amendments because he was not sentenced under an amendment to the Nevada state weapon enhancement statute, N.R.S. 193.165, that became effective after his offense but prior to his sentencing.

  On February 28, 2008, Carey pled guilty to second-degree murder with the use of a firearm in the murder of George Kelly, Jr., on November 18, 2006. Under the law in place when Carey committed the offense on November 18, 2006, N.R.S. 193.165 provided for an automatic sentencing enhancement of an additional consecutive sentence equal to the sentence imposed on the primary offense in question

1 when a firearm was used. The statute thereafter was amended to provide for a more flexible sentencing
2 structure on the weapon enhancement sentence, with a statutory maximum on the consecutive
3 enhancement sentence of 20 years. The amendment became effective on July 1, 2007.

4   It was expressly acknowledged in the written plea agreement and during the plea colloquy that
5 the parties remained free to argue their respective positions as to whether the amendment should be
6 applied to petitioner's sentencing. Carey entered the plea expressly with the understanding that the state
7 courts might reject his argument that the new law should apply to his case and hold that the amendment
8 did not apply to his sentencing.

9   On June 12, 2008, the matter came on for sentencing. The state district court rejected Carey's
10 argument that the amendment should apply to his case. The court sentenced him to equal and
11 consecutive terms of 10 to 25 years.

12   The judgment of conviction was filed the same day, and Carey timely appealed.

13   On July 24, 2008, the Supreme Court of Nevada issued its decision in *State v. Second Judicial*
14 *District Court (Pullin)*, 124 Nev. 564, 188 P.3d 1079 (2008). In *Pullin*, the state supreme court held
15 that, under Nevada state law, the July 1, 2007, amendment to 193.165 did not apply retroactively to
16 offenders who committed their crimes prior to the effective date of the amendment but who were
17 sentenced after that date.

18   On August 25, 2009, in Carey's case, the Supreme Court of Nevada affirmed the district court
19 decision and sentencing. The state supreme court held:

> The sole issue raised in this appeal is whether the district court erred in refusing to apply the ameliorative amendments to the deadly weapon enhancement statute that took effect after Carey committed the underlying offense but before he was sentenced. Although Carey recognizes that this court recently considered this issue in State v. Dist. Ct. (Pullin), 124 Nev. ___, 188 P.3d 1079 (2008), and held that the 2007 amendments to NRS 193.165 do not apply to offenses committed before the effective date of the amendments, Carey argues that federal constitutional law requires retroactive application of the amendments and urges this court to reconsider our decision in Pullin. We disagree with Carey's assertion that federal constitutional law requires retroactive application of the 2007 amendments to NRS 193.165, and we decline to reconsider our decision in Pullin. Consistent with our decision in Pullin, we conclude that Carey's argument lacks merit. . . . .

28 #4, Ex. 13.

Petitioner filed the present federal petition through counsel on March 12, 2010. Initially, as discussed further, *infra*, he presented only one ground. He alleged therein that due process requires that the 2007 amendment to N.R.S. 193.165 be applied retroactively to his case because, although he committed the offense prior to the effective date of the statute, he was sentenced after that date.

### *Governing Standard of Review*

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly deferential" standard for evaluating state-court rulings that is "difficult to meet" and "which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011). Under this highly deferential standard of review, a federal court may not grant habeas relief merely because it might conclude that a decision was incorrect. 131 S.Ct. at 1411. Instead, under 28 U.S.C. § 2254(d), the court may grant relief only if the decision: (1) was either contrary to or involved an unreasonable application of clearly established law as determined by the United States Supreme Court based on the record presented to the state courts; or (2) was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 131 S.Ct. at 1398-1401.

A state court decision on the merits is "contrary to" law clearly established by the Supreme Court only if it applies a rule that contradicts the governing law set forth in Supreme Court case law or if the decision confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result. *E.g., Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003). A decision is not contrary to established federal law merely because it does not cite the Supreme Court's opinions. Id. Indeed, the Court has held that a state court need not even be aware of its precedents, so long as neither the reasoning nor the result of its decision contradicts them. *Id*. Moreover, "[a] federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." 540 U.S. at 16. For, at bottom, a decision that does not conflict with the reasoning or holdings of Supreme Court precedent is not contrary to clearly established federal law.

A state court decision constitutes an "unreasonable application" of clearly established federal law only if it is demonstrated that the state court's application of Supreme Court precedent to the facts of the case was not only incorrect but "objectively unreasonable." *E.g., Mitchell*, 540 U.S. at 18.

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of Section 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference to the state court's determination:

> . . . . [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence.

The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Pinholster*, 131 S.Ct. at 1398.

## *Discussion*

As noted above, petitioner initially presented only a single ground alleging that due process requires that the 2007 amendment to N.R.S. 193.165 be applied retroactively to his case because, although he committed the offense prior to the statute's effective date, he was sentenced after that date.

In the original federal petition, petitioner contended that the state supreme court's rejection of his constitutional claim constituted an unreasonable application of the following decisions of the United States Supreme Court: *McBoyle v. United States*, 283 U.S. 25 (1931); *United States v. Bass*, 404 U.S. 336 (1971); *Dobbert v. Florida*, 432 U.S. 282 (1977); *United States v. Lanier*, 520 U.S. 259 (1997); and *United States v. Santos*, 553 U.S. 507 (2008).

Petitioner contended that these decisions establish a doctrine of lenity applicable to the States under the Due Process Clause that requires that, in the absence of contrary legislative intent, an ameliorative sentencing statute must apply to all subsequent sentencing proceedings regardless of when the underlying offense occurred.

Following screening, the Court directed petitioner to show cause why the petition should not be dismissed with prejudice on the merits. The show-cause order directed petitioner to demonstrate, in particular, that the state supreme court's rejection of his due process claim was either contrary to or an unreasonable application of United States Supreme Court case law existing at the time of the state supreme court's decision.

The Court incorporates Judge Reed's complete analysis in the show-cause order of the United States Supreme Court decisions relied upon by petitioner as if set forth in full herein *in extenso*.[1] In connection with his discussion of the specific individual cases, Judge Reed concluded as follows:

> The foregoing four United States Supreme Court decisions [in *McBoyle, Bass, Lanier* and *Santos*] were not presented with, nor did they consider, a situation where subsequent statutory language provided for a more flexible sentencing structure with respect to a crime than existed at the time of the particular offense in question. The four decisions clearly were not presented with any question as to whether the Due Process Clause of the Fourteenth Amendment requires that the States retroactively apply such a statutory change to a sentencing for an offense committed prior to the effective date of the act unless the state legislature expressly provides for such retroactive effect. The four decisions made no holding on any such issue; and the four decisions did not contain any *dicta* discussing any such issue, which, again, clearly was not even remotely presented in those cases.[FN8]
>
>> [FN8] The Court additionally notes that all four decisions concerned federal criminal prosecutions, and the cases did not discuss the application of any federal constitutional due process requirements to state criminal prosecutions. The *McBoyle, Bass*, and *Santos* decisions all discussed the rule of lenity only with regard to a question of statutory construction, *i.e.*, one of determining Congressional intent as to a federal criminal statute, not as a matter of a constitutional requirement. A due process constitutional overtone to the fair warning requirement was discussed only in *Lanier* and only in passing. There certainly are constitutional overtones to the fair warning requirement as a general matter. However, petitioner's reliance upon decisions addressing a question of federal statutory construction regarding the proper construction of an element of an offense in an effort then to dictate a constitutional result on an entirely distinct sentencing issue that was not even before the Supreme Court in those decision[s] is -- at its exceeding level best -- a stretch.

---

[1] #5, at 4-12.

In *Dobbert*, the United States Supreme Court did address a sentencing issue. The Court did not, however, apply a rule of lenity, and the term "lenity" does not even appear in the opinion. Nor did the Court address a claim under the Due Process Clause of either the Fifth or Fourteenth Amendment, and, once again, the phrase "due process" does not even appear in the opinion.

*Dobbert* instead addressed a question of whether application of a post-offense change to a state capital sentencing procedure violated the Ex Post Facto Clause of Article I, Sec. 10 of the Constitution. Under the old capital sentencing procedure prior to the date of the offense in question, the death penalty was the presumed punishment unless the jury, in its discretion, made a recommendation for mercy. 432 U.S. at 294, 97 S.Ct. at 2299. Under the new procedure adopted after the offense, death no longer was the presumed punishment, and a jury determination of either death or mercy was not binding, as the jury determination could be overridden by the trial judge under specified criteria and subject to automatic appellate review if a death sentence was imposed. 432 U.S. at 290-91, 97 S.Ct. at 2296-97.

The Supreme Court held that the retroactive application of the change to the sentencing statute did not violate the Ex Post Facto Clause for two reasons. First, the Court held that the retroactive application of the statute did not violate the *ex post facto* prohibition because the change was "procedural," in that it "neither made criminal a theretofore innocent act, nor aggravated a crime previously committed, no provided greater punishment, nor changed the proof necessary to convict." 432 U.S. at 293, 97 S.Ct. at 2298. Second, the Court held that the retroactive application of the statute did not violate the *ex post facto* prohibition because the change was "ameliorative." The Court noted that "[i]t is axiomatic that for a law to be *ex post facto* it must be more onerous than the prior law." 432 U.S. at 294, 97 S.Ct. at 2299.

The *Dobbert* Court clearly made no holding that the State was *required* to apply the ameliorative sentencing statute retroactively, and no such issue was presented. Rather, the fact that the change was ameliorative *allowed* the State to apply the change retroactively over an *ex post facto* objection; it did not *require* that the change be applied retroactively.

Application of the foregoing five United States Supreme Court decisions to petitioner's case reflects the following.

At the time of Carey's offense, N.R.S. 193.165 provided – with absolutely no ambiguity – that "any person who uses a firearm or other deadly weapon . . . in the commission of a crime shall be punished by imprisonment in the state prison for a term equal to and in addition to the term of imprisonment prescribed by statute for the crime," with the sentence running consecutively with the sentence imposed for the crime. Nothing in the holdings of the four "rule of lenity" decisions relied upon by petitioner would dictate anything other than a direct application of the unambiguous language of the statute as of the time of the offense. Anyone reading the statute at the time of Carey's offense would have had not only a fair, but indeed an explicitly clear, warning that they would be subjected to twice the punishment for committing the crime

with the use of a firearm.

Petitioner, of course, seeks to draw from the lenity cases an overarching rule that any time that there – allegedly – is an ambiguity on any statutory issue of any nature concerning a criminal conviction, the Due Process Clause of the Fourteenth Amendment requires the States to resolve the issue in the defendant's favor. No such holding applicable to this case was made in the four lenity cases cited. The four cases all involved construction of legislative intent in defining the an element of an offense rather than any question of retroactivity of a post-offense change to a sentencing statute.

With regard to *Dobbert*, petitioner urges that *Dobbert* requires that "the court must apply the ameliorative version of the statute in effect as of the date of sentencing." *Dobbert* was not presented with any such issue, and clearly made no holding on any such issue. *Dobbert* instead addressed an issue as to whether the Ex Post Facto Clause *prohibited* such retroactive application of an ameliorative sentencing statute, and it held that it did not. The Ex Post Facto Clause of course has no remotely conceivable application to this case, given that the law in force on the date of Carey's offense was applied to his case. *Dobbert* made no holding as to the Due Process Clause, much less one applicable to this case, and the opinion does not even mention that provision of the Constitution. Nothing in the opinion suggests the Due Process Clause *requires* that an ameliorative sentencing statute be applied retroactively.

Under the AEDPA, the state courts must follow the holdings of the United States Supreme Court, not *dicta* in its opinions. *See,e.g., Cheney v. Washington*, 614 F.3d 987, 993-94 (9 Cir. 2010). If no Supreme Court precedent creates clearly established federal law relating to the legal issue that the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law. *E.g., Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir.2004). None of the five Supreme Court decisions relied upon by petitioner hold that the Due Process Clause requires States to apply an ameliorative sentencing statute retroactively absent a contrary expression of legislative intent. None of the five decisions were presented with such an issue. None of the decisions even discussed such an issue in *dicta*, which the Supreme Court of Nevada in any event would not have been bound to follow. The state supreme court's rejection of petitioner's claim based upon these United States Supreme Court decisions thus clearly was neither contrary to nor an unreasonable application of clearly established federal law under the AEDPA.

#5, at 8-11 (footnotes 9-11 omitted for brevity). See also *id.*, at 12 (re: other federal and state cases).

In his show-cause response, petitioner, *inter alia*, made a claim for the first time in either state or federal court that the Supreme Court of Nevada had denied him due process of law by unforeseeably enlarging the meaning of a criminal statute through an allegedly unforeseeable and detrimental new interpretation in *Pullin* that was applied retroactively to him. The Court thereupon gave petitioner an opportunity to amend the petition to assert such a claim and, if he did so, to then demonstrate that the

-7-

1  petition was not subject to dismissal as a mixed petition that included an unexhausted claim.[2] Petitioner
2  amended the petition to assert the new claim as Ground 2, and he sought to demonstrate that the claim
3  was exhausted. The Court held otherwise and denied petitioner's motion for a stay on the showing
4  made.[3] Petitioner thereafter has sought the dismissal of Ground 2, and the grant of that dismissal leaves
5  only Ground 1, the original claim considered by the Court in the original show-cause order.

6  Returning now to a consideration of the merits of Ground 1 on the original show-cause inquiry,
7  the Court holds, for the reasons outlined by Judge Reed in the show-cause order, that the state supreme
8  court decision rejecting petitioner's claim was neither contrary to nor an objectively unreasonable
9  application of clearly established federal law as determined by the United States Supreme Court.

10  In the show-cause response on the merits, petitioner posits the existence of a dichotomy in
11  applying § 2254(d)(1) between "fact-specific doctrine" cases and "more general doctrine" cases. As
12  petitioner's argument goes, in "fact-specific doctrine" cases, the petitioner cannot prevail under §
13  2254(d)(1) unless he can present a United States Supreme Court case on point that the state supreme
14  court case either was contrary to or unreasonably applied. In "more general doctrine" cases, in contrast,
15  a petitioner allegedly need not present a United States Supreme Court authority on point to carry his
16  burden under § 2254(d)(1). Petitioner posits that the question in his case "is whether the 'doctrine of
17  lenity' or the 'doctrine of fair warning' is a fact-specific doctrine . . . or a more general doctrine . . . ."
18  Hardly surprisingly, he posits that his issue involves a "more general doctrine," such that he purportedly
19  need not present apposite Supreme Court authority "on the same facts" supporting his position.[4]

20  Petitioner's argument is cut from whole cloth and has no bearing on the resolution of this case.
21  Whereas the clear intent of AEDPA was to defer to state court adjudication of federal constitutional
22  claims where there was no contrary apposite Supreme Court doctrine, petitioner's *sui generis* argument
23  would supplant deferential review under AEDPA with in effect *de novo* review in precisely the context
24  where AEDPA mandates deference, where there are no clear Supreme Court guideposts.

---

26  [2]See #8.

27  [3]See ## 12 & 18.

28  [4]#6, at 3-10.

-8-

Indeed, petitioner's "more general doctrine" argument in fact proves too much -- at least vis-à-vis petitioner establishing a basis for relief under § 2254(d)(1) – under the analysis actually followed by the Supreme Court in applying AEDPA. The generality of an alleged rule in Supreme Court jurisprudence makes it *harder* for a petitioner to establish a basis for relief under § 2254(d)(1), not *easier*:

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Ibid*. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. ——, ——, 129 S.Ct. 1411, 1413–14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

*Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Petitioner's argument therefore detracts from rather than supports his claim. If what petitioner indeed is relying on are only broad, nonspecific precepts floating freely in Supreme Court jurisprudence that have no doctrinal context specific to this case, then what he has tended to establish is that the state supreme court's rejection of his argument based upon such broad, nonspecific precepts was neither contrary to nor an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

In all events, the difficulty for petitioner is not that the case might be a "fact-specific doctrine" case rather than a "more general doctrine" case but instead is that there is *no doctrine* in a holding of the Supreme Court that supports his claim that was contrary to the state supreme court's decision or that was unreasonably applied by that court. As outlined in the show-cause order, none of the Supreme Court decisions relied upon by petitioner hold that the Due Process Clause requires States to apply an ameliorative sentencing statute retroactively absent a contrary expression of legislative intent, none of the decisions were presented with such an issue, and none of the decisions even discussed such an issue in *dicta*.

There simply *is* no clearly-established *constitutional* "doctrine of lenity" under Supreme Court jurisprudence applicable to the States – whether "fact-specific," "more general," or otherwise.

-9-

Petitioner has taken federal criminal cases applying a doctrine of lenity *in construing Congressional intent as to the elements of federal criminal statutes* and jumped to the conclusion, with no supporting Supreme Court authority, that there is an overarching constitutional "doctrine of lenity" that must be applied to and by the States under the Fourteenth Amendment. While a petitioner need not cite a case exactly factually on point to establish an unreasonable application of, *e.g., Jackson v. Virginia*, 443 U.S. 307 (1979), there is Supreme Court doctrine applying a constitutional sufficiency of the evidence standard to the States. *There is no clearly-established Supreme Court doctrine applying a constitutional rule of lenity to the States, much less constitutional doctrine mandating that States must apply ameliorative sentencing statutes retroactively.* That is why petitioner cannot prevail under § 2254(d)(1) in this case, not because there is no Supreme Court case *factually* on all fours with his case. What petitioner lacks is constitutionally apposite *doctrine*, not simply a case with apposite *facts*.[5]

Petitioner's remaining arguments in his show-cause response in essence quarrel with the Nevada state supreme court's application of Nevada state law. Petitioner acknowledges that while N.R.S. 193.165 is not ambiguous, he maintains that there is ambiguity as to whether the Nevada legislature intended for the 2007 amendment to apply retroactively. The Supreme Court of Nevada resolved the issue of the retroactive application of the statute adversely to petitioner, and that court is the final arbiter of Nevada state law. Petitioner has failed to demonstrate that the state supreme court's rejection of his associated due process claim – *i.e.*, the claim that he exhausted – was either contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court. That is the end of the matter for purposes of federal habeas review. Petitioner's arguments as to alleged ambiguity in state law that the state supreme court saw differently and/or as to assorted "conundrums" in Nevada case law beg the question and do not provide a basis for federal habeas relief. The federal courts do not oversee state courts' application of state law.

////

---

[5] See also #5, at 8 n.8 & 10 (discussion of fair warning requirement in show-cause order). *Accord Gollehon v. Mahoney*, 626 F.3d 1019, 1027-28 (9th Cir. 2010)(the rule of lenity simply is a canon of statutory construction, and a federal habeas court has no authority to apply it to countermand a state supreme court's holding that there is no state statutory ambiguity warranting its application; there is nothing in the federal constitution that would *require* a state court to apply a rule of lenity in interpreting a state statute)(as emphasized in the opinion).

-10-

The sole exhausted claim before the Court in Ground 1 accordingly does not provide a basis for federal habeas relief.[6]

IT THEREFORE IS ORDERED that petitioner's motion (#22) to dismiss Ground 2 is GRANTED and that Ground 2 is DISMISSED without prejudice for lack of exhaustion.[7]

IT FURTHER IS ORDERED that the sole remaining ground in the petition, Ground 1, is DISMISSED with prejudice on the merits.

IT FURTHER IS ORDERED that a certificate of appealability is DENIED. Jurists of reason would not find the district court's rejection of petitioner's exhausted claim to be debatable or wrong. As discussed herein and in the prior show-cause order (#5), none of the United States Supreme Court decisions upon which petitioner relies include *dicta*, much less a holding, that was contrary to the decision of the Supreme Court of Nevada in this case or that was unreasonably applied by that court. Petitioner's merits argument would be strained at best even on a *de novo* review. *A fortiori*, on deferential review under § 2254(d)(1), it is clear that petitioner cannot establish a basis for relief on the only exhausted claim presented. Jurists of reason additionally would not find debatable or wrong the district court's holdings that the new federal claim that petitioner raised for the first time in his show-cause response is unexhausted and that a stay was not warranted on the showing made. See ## 12 & 18.

---

[6]The Court afforded petitioner an opportunity to present supplemental argument based upon *Dorsey v. United States*, 132 S.Ct. 2321 (2012). #8, at 9. It does not appear that petitioner relies upon *Dorsey*, albeit with good reason. In *Dorsey*, the Supreme Court held that the more lenient penalties under the Fair Sentencing Act applied to offenders who committed an offense prior to the effective date of the Act but who were sentenced after that date. *Dorsey* stated no constitutional rule, much less one applicable to the States, as the case turned upon a construction of Congressional intent. If anything, the involved discussion of legislative intent in *Dorsey* as well as the federal circuit split leading to the grant of *certiorari* in *Dorsey* emphasizes how wide the range of permissible decision was previously in 2009 when the Supreme Court of Nevada decided Carey's appeal – in deciding a question of *Nevada* legislative intent by the final arbiter of Nevada state law. *Dorsey construed* Congressional intent; it did not hold that Congress could not do other than what the Supreme Court ultimately concluded that it intended. In all events, even if the 2012 decision in *Dorsey* were dead on point, it would not demonstrate that the 2009 Supreme Court of Nevada decision in Carey's case was either contrary to or an unreasonable application of clearly established law as determined by the United States Supreme Court. "Clearly established federal law" under § 2254(d)(1) refers to Supreme Court case law at the time that the state court adjudicated the merits. *E.g., Greene v. Fisher*, 132 S.Ct. 38 (2011).

[7]While the dismissal of Ground 2 is without prejudice as to the ground itself, nothing in the Court's order precludes the application of, *inter alia*, timeliness and successive-petition rules to a later federal petition or other attempt to present that ground or other grounds in subsequent proceedings.

1       IT FURTHER IS ORDERED that, pursuant to Rule 4 of the Rules Governing Section 2254 Cases, the Clerk of Court shall provide respondents notice of the action taken herein by effecting informal electronic service of the order and judgment upon Catherine Cortez Masto as per the Clerk's current practice, together with regenerating notices of electronic filing to her office of the prior filings herein.  **No response is required from respondents, other than to respond to any orders of a reviewing court.**

        The Clerk shall enter final judgment accordingly, in favor of respondents and against petitioner, dismissing this action with prejudice.

        DATED this 29th day of March, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE